UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CASE NO. 21-cr-381 (TSC) |
| v. | : | |
| | : | |
| STACY WADE HAGER, | : | |
| | : | |
| Defendant. | : | |

### GOVERNMENT'S MOTION *IN LIMINE* REGARDING EVIDENCE ABOUT THE SPECIFIC LOCATIONS OF UNITED STATES CAPITOL POLICE SURVEILLANCE CAMERAS

The United States of America moves *in limine*, pursuant to Fed. R. Evid. 401, 403, and 611(b), to restrict the presentation of evidence regarding the specific position of United States Capitol Police surveillance cameras. The parties consulted prior to filing this motion. The defense does not oppose this motion; however, the defense wishes to be able to argue: "the Government did not present video evidence from Capitol Surveillance from outside the door Defendant entered." The Government concedes his argument would be outside the relief requested in this motion.

### INTRODUCTION

To meet its burden of proof at trial, the Government will present video evidence from a variety of sources, including Capitol Police surveillance footage. As detailed in the Declaration of Thomas A. DiBiase (exhibit 1), the Capitol Police maintains an extensive closed-circuit video system. This system includes cameras inside the Capitol Building, inside other buildings within the Capitol Complex, and outside on the Capitol grounds. These cameras captured thousands of hours of footage from the

breach of the United States Capitol and have been instrumental in documenting the events of January 6, 2021.

However, the United States Capitol Police's surveillance system also serves an important, *and ongoing*, function in protecting Congress and, by extension, national security. In particular, the footage from the system is subject to limitations on access and dissemination. (*See* Exhibit 1) And, to find relevant footage from the Capitol Police's surveillance system and adequately prepare for trial, given the unique architecture of the United States Capitol, one would need guidance to orient oneself to the different camera angles. The Government has therefore provided the defense with maps that display the locations of the cameras.

However, due to the sensitive nature of these items, the government seeks an order limiting the defense from probing, during cross-examination, the exact locations of Capitol Police surveillance cameras or from using the maps, which show each camera's physical location, as an exhibit at trial.[1]

## ARGUMENT

I. **This Court Has the Discretion to Limit the Presentation of Evidence and Cross-Examination of Witnesses at Trial.**

It is well established that a trial court has the discretion to limit a criminal defendant's presentation of evidence and cross-examination of witnesses. *See Alford v United States*, 282 U.S. 687 (1931) ("The extent of cross-examination [of a witness]

---

[1] These maps have been disclosed to the defense, but pursuant to the terms of the protective order, have been designated Highly Sensitive. Moreover, these maps have been designated as "Security Information" under 2 U.S.C. § 1979, which forbids their use without the approval of the Capitol Police Board.

with respect to an appropriate subject of inquiry is within the sound discretion of the trial court."); *United States v Whitmore*, 359 F.3d 609, 615-16 (D.C. Cir. 2004) ("The district court . . . has considerable discretion to place reasonable limits on a criminal defendant's presentation of evidence and cross-examination of government witnesses."). A trial court has the discretion to prohibit cross-examination that goes beyond matters testified to on direct examination. Fed. R. Evid. 611(b). This is particularly so when the information at issue is of a sensitive nature. *See e.g., United States v Balistreri*, 779 F.2d 1191, 1216-17 (7th Cir. 1985) (upholding district court's decision to prohibit cross-examination of agent about sensitive information about which that agent did not testify on direct examination and which did not pertain to the charges in the case), *overruled on other grounds* by *Fowler v Butts*, 829 F.3d 788 (7th Cir. 2016). Other permissible reasons for limiting cross-examination include preventing harassment, prejudice, confusion of the issues, or repetitive, cumulative, or marginally relevant questions. *Delaware v Van Arsdall*, 475 U.S. 673, 679 (1986).

While limiting a defendant's opportunity for cross-examination may implicate the constitutional right to confront witnesses, the Confrontation Clause only guarantees "an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Delaware v Fensterer*, 474 U.S. 15, 20 (1985) (emphasis in original). Even evidence that may *become* relevant to an affirmative defense should be excluded until the defendant sufficiently establishes that defense during his own case-in-chief. *See United States v Lin*, 101 F.3d 760, 768 (D.C. Cir 1996) (acknowledging trial court has

discretion to limit cross-examination on prejudicial matters without reasonable grounding fact); *United States v Sampol*, 636 F.2d 621, 663-64 (D.C. Cir. 1980) (holding that trial court properly limited cross-examination of alleged CIA murder scheme until defense put forth sufficient evidence of the affirmative defense in its case-in-chief); *United States v Stamp*, 458 F.2d 759, 773 (D.C. Cir. 1971) (finding trial court properly excluded cross examination of government's witness with response to matter only related to an affirmative defense and not elicited through direct exam).

Preventing the defendant from exploring the topics identified above will not infringe his Confrontation Clause right because the exact positions of cameras, and the camera map, are of marginal probative value and any probative value can be addressed without compromising the Capitol Police's protective function, which implicates national security.

### II. The Defendant Should Be Precluded from Questioning Witnesses about the Exact Positions of Capitol Police Cameras, Introducing Such Evidence Himself, or Admitting Capitol Police Maps of Camera Coverage.

Here, the defendant is charged with violations of 18 U.S.C. § 1752(a)(1) (Entering and Remaining in a Restricted Building or Grounds); 18 U.S.C. § 1752(a)(2) (Disorderly and Disruptive Conduct in a Restricted Building or Grounds); 40 U.S.C. § 5104(e)(2)(D) (Disorderly Conduct in a Capitol Building); and 40 U.S.C. § 5104(e)(2)(G) (Parading, Demonstrating, or Picketing in a Capitol Building). To prove violations of these statutes, the Government intends to offer footage from Capitol Police cameras showing the unlawful entry of defendant, his path through the Capitol

Building, and his conduct while on restricted Capitol Grounds and inside the Capitol Building on January 6, 2021.

Evidence about the exact locations of cameras, and the maps used to locate the cameras, should be excluded in light of the ongoing security needs of the Capitol. The defense can probe what Capitol Police's cameras show, and what they do not show, by asking about the general location of each camera. A general description, and the footage from the camera itself, will make clear what the camera recorded and what it did not. Additionally, presenting the map of all Capitol Police cameras would risk compromising security concerns for no additional probative value. The map contains camera locations for *all* cameras, including ones that did not capture the defendant's movements that day.

Even assuming the evidence to be excluded is marginally relevant, such relevance is substantially outweighed by the danger to national security. If the map of the Capitol cameras is introduced in this trial, or in any trial, it becomes available to the public. Immediately, anyone could learn about the Capitol Police's camera coverage as of January 6, 2021, and—more importantly—could learn about the parts of the Capitol where cameras *were not* installed. Broader presentation of evidence about camera locations could compromise national security without adding any appreciable benefit to the determination of the truth, or the veracity or bias of witnesses.

### III. Alternatively, The Government Requests an *In Camera* Proceeding to Determine the Admissibility of Certain Evidence.

If the defense believes that presentation of the exact locations of the Capitol Police cameras is necessary, or that presentation of the Capitol Police map is necessary, the Government requests that the Court conduct a hearing *in camera* to resolve the issue. As noted, in this case, disclosure of certain information could prove detrimental to the Capitol Police's ability to protect members of Congress and could affect our national security. Courts have found such considerations justify *ex parte*, *in camera* proceedings. *See United States v Nixon*, 418 U.S. 683, 714 (1974) (affirming a district court's order for *in camera* inspection of subpoenaed presidential materials); *United States v Kampiles*, 609 F.2d 1233, 1248 (7th Cir. 1979) ("It is settled that in camera . . . proceedings to evaluate bona fide Government claims regarding national security information are proper."). At any such hearing, the defendant should be required to make "a proffer of great specificity" regarding the need for the evidence and the scope of his questions.

## CONCLUSION

For these reasons, the United States requests that this Court enter an order, as described above, limiting the presentation of evidence about the precise locations of Capitol Police surveillance cameras, including using Capitol Police maps. If this Court determines an evidentiary hearing is necessary to rule on this motion, the Government asks that the hearing be held *in camera*.

Respectfully Submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

/s/ *Adam M. Dreher*
Adam M. Dreher
Assistant United States Attorney
MI Bar No. P79246
601 D. St. N.W.
Washington, D.C. 20530
(202) 252-1706
adam.dreher@usdoj.gov