UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA

  v.              Case No.  21-cr-381 TSC

STACY HAGER

## DEFENDANT'S MEMORANDUM IN AID OF SENTENCING

  Comes now the defendant, by and through his attorney, Richard S. Stern, to respectfully move this Honorable Court to sentence Mr. Hager to a reasonable and minimal sentence with appropriate conditions.

  As grounds therefore, we state as follows:

  1. Before January 6, 2021, Mr. Hager lived a fairly normal life.  He was retired and enjoyed spending time with family.

  2. Mr. Hager's intention on January 6, 2021was just to go to Washington to attend the Rally near the White House, which he did.

  3. Mr. Hager was found guilty after a non-jury trial in a four-count information.

  4. The draft presentence report shows that the defendant never exercised managerial authority over any other participant. He thus should be considered an average participant.

  5. At no point in time was Mr. Hager violent, suggest violence on the part of anyone else or break or destroy any property.  He saw doors that were open and people freely coming and going through them.  He perceived that he was being allowed entry because a person he believed to be a policeman was letting him in, which was shown on the tape and agreed to buy the FBI case agent who testified in the case.   She referred to the person near the security equipment in front of where Mr. Hager entered the Capitol as a police officer.

1

6.	Mr. Hager is a person who can be trusted to do whatever the court orders in terms of sentencing conditions and requirements while on release since he has complied with all requirements and reporting conditions required of him by the Court and by Pretrial Services both in Washington DC and in Waco TX.

7.	Yet Mr. Hager was improperly stopped at a border crossing approximately 100 miles from the Mexican border because he was listed in law enforcement data as a dangerous person, which he is not.  We brought that stop before the Court causing the Court to later hold a hearing on the matter when it learned that he was not only stopped but was actually detained in a holding cell for about 3 hours.  He was simply going from his home in Gatesville TX to see his grandchildren in Phoenix, AZ.  Even though the court held a hearing on this and spoke to the Pretrial Services Officer supervisor in Waco, he was scared simply to travel to Arizona.   We should also note that Mr. Hager always informed Pretrial Services when he left to go to Arizona.

8.	Unfortunately, this happened again on March 25, 2023, around 10:00 p.m. and he was held at the same border checkpoint. He was stopped because of the car he was riding, which is not his, but was registered to his partner Ricky Minyard who was never to the Capitol January 6th.  This time he was not even driving. Both of them were held, not just him.  Mr. Hager asked why he was held, but did not get an answer.  He was there for about forty-five minutes or so in a holding area but was not locked in.  He saw two of the same officers who were there the last time and they recognized him.  They appeared to have said that they got orders to detain him, but did not know what to do with him. The cops appeared to be friendly and matter of fact, but they did not seem to know why they had to treat him the way they did.

9.	We submit Mr. Mr. Hager was always cooperative with the FBI.   Even though he was not at home when the FBI came to serve the arrest warrant and the search warrant in the

case, he told the agents where the items were that they wanted to find and turned himself into the FBI office voluntarily.

10. Even though Mr. Hager is retired at this time, he has worked many years driving a truck, delivering goods and other similar work which often involved hours that were not only long, but very late into the night.

11. At the present time he's a grandfather and he wants to be with his grandchildren and help them have the life that he did not have. As noted above he has traveled to Phoenix, AZ to see his grandchildren which is a very long drive for him, but he cares about his grandchildren so much that he went the second time to Phoenix, even though he knew then he might be stopped again.

12. We strongly feel that a minimal sentence would be most appropriate in this case. He is not a young man and even now his life is not particularly easy with his medical problems. His medical issues also result from his bull riding days. See draft presentence report at ECF 52 ¶77:

> "Mr. Hager has medical problems many of which come from his days of riding bulls in the rodeos in Texas which is a very dangerous sport as a result of which he has broken many bones and had to go to the hospital many times. Defendant Hager stated he was in several bull riding accidents in his early to mid-thirties. He suffered numerous broken ribs and a collapsed lung. As per the defendant, his ribs have since healed and he has no enduring issues. The defendant noted he received medical attention at Temple Scott and White Medical Center in Temple, Texas. Medical records were requested from this facility but have not been received."

13. Mr. Hager has never had an easy life even before his medical problems and injuries from bull riding as can be seen from his childhood. His parents divorced when he was only 10 years old and the man whom his mother later was married was an alcoholic. The draft presentence report notes:

"His life has been difficult starting in his early childhood years with an abusive father and his parents divorcing had an early age. He has had to live in different places as a result of the divorce. He lived with his mother until he was thirteen years old and then, to be close to his pet horse, the defendant went to live with his father for four years. The defendant thereafter "ran away" from his father's house because his father was an alcoholic. Defendant Hager explained after running away, he spent time with some "adults" [unnamed] who helped take care of him for a couple years." ECF 52 ¶64.

14. Because of his difficult childhood, he wants his grandchildren to have a better life.

15. His prior dealings with the criminal justice system in the past have been minor and very stale. Aside from a simple possession of marijuana charge in 1982, all other convictions were in the nature of driving while intoxicated and other traffic offenses, for each of which he completed the sentences without incident and has not been arrested for the past 34 years or so. Because of the age of these matters, his criminal history is 0. ECF 52 ¶48-54.

16. Mr. Hager helps to take care of his mother, who has also written a letter on his behalf in this case. She is 82 and has substantial medical problems, suffering from Alzheimer's disease and has a history of cancer. He is the only one of the children who lives near their mother, so he is the one that mostly takes care of her and/or tends to her needs when the time arises. ECF 52 ¶60-61.

17. Thus, Mr. Hager has a family that needs him very much both physically and emotionally.

18. Attached to this this memorandum are 38 letters. Mr. Hager's friends sent 30 letters and his family sent 7 letters. His partner, Ricki Minyard, wishes to read her letter to the Court directly as does his daughter Nicole Milsap. The letters attest to his good character, to his remorse and to what a good person he is.

19. Mr. Hager is not alleged to have obstructed justice in this matter. ECF 52 ¶27.

20. We submit that that Mr. Hager has been very remorseful about going to the Capitol on January 6th and has voiced that remorse to his many friends and family who care about him in their many letters. The government even notes in their sentencing memorandum that Mr. Hager told the FBI agent when he first spoke to him on May 25, 2021 that he was let into the Capitol by a police officer. Mr. Hager later told the agent that he knew what he did was wrong. The agent said that Mr. Hager "… told the same agent that Hager knew what he did was wrong." ECF 58 page 8.

21. We filed objections to the draft presentence report as to the calculated guidelines. ECF 52 ¶117. Our objection was:

"The 1752 counts were in the nature of a trespass. We submit the guideline level for the two Section 1752 offenses should be 2B2.3(a) for a level 4 with a 2-point enhancement for restricted building under 2B2(b)(1)(A) coming to a total level of 6, not 10. See below. At no point did Mr. Hager obstruct or impede police officers. This calculation was accepted by Judge Howell in US v. Lindsey, 21-cr-162.

§2B2.3 - Trespass

(a) Base Offense Level: **4**

(b) Specific Offense Characteristics

(1) (Apply the greater) If—

(A) the trespass occurred (i) at a secure government facility; (ii) at a nuclear energy facility; (iii) on a vessel or aircraft of the United States; (iv) in a secure area of an airport or a seaport; (v) at a residence; (vi) at Arlington National Cemetery or a cemetery under the control of the National Cemetery Administration; (vii) at any restricted building or grounds; or (viii) on a computer system used (I) to maintain or operate a critical infrastructure; or (II) by or for a government entity in furtherance of the administration of justice, national defense, or national security, increase by **2** levels; or

(B) the trespass occurred at the White House or its grounds, or the Vice President's official residence or its grounds, increase by **4** levels.

(2) If a dangerous weapon (including a firearm) was possessed, increase by **2** levels.

(3) If (A) the offense involved invasion of a protected computer; and (B) the loss resulting from the invasion (i) exceeded $2,500 but did not exceed $6,500, increase by **1** level; or (ii) exceeded

5

$6,500, increase by the number of levels from the table in §2B1.1 (Theft, Property Destruction, and Fraud) corresponding to that amount."

    22.  Section §2A2.4 - OBSTRUCTING OR IMPEDING OFFICERS reads as follows:

(a) Base Offense Level: 10

(b) Specific Offense Characteristics

(1) If (A) the offense involved physical contact; or (B) a dangerous weapon (including a firearm) was possessed and its use was threatened, increase by **3** levels.

(2) If the victim sustained bodily injury, increase by **2** levels.

(c) Cross Reference

(1) If the conduct constituted aggravated assault, apply §2A2.2 (Aggravated Assault).

    23.  Clearly there was no evidence, nor was there any allegation, that Mr. Hager had committed any improper bodily contact, nor did he have a dangerous weapon, so this section should not apply.  If Mr. Hager is sentenced without acceptance of responsibility under the above, his guidelines are at an offense level of 6 (4 with a 2 level enhancement for trespass on a secure government facility) and a criminal history of 0.  The guideline sentence is 0-6 months.

    24.  We have also filed objections to the draft presentence report and submit that no financial penalty be given in this case other that the required special assessments even though the presentence writer has determined the defendant does have sufficient funds to pay.

    25.  In sum, we submit that given all the above, a reasonable below guidelines sentence with appropriate conditions would be fair and reasonable.

    WHEREFORE, we pray that the Court order the requested sentence with any and all conditions it deems appropriate.

Respectfully submitted,

/s/ Richard S. Stern

_____

RICHARD S. STERN
D.C. Bar No. 205377
932 Hungerford Drive #37A
Rockville, MD 20850
301-340-8000
Email:  rssjrg@rcn.com
Attorney for Mr. Hager

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that I have electronically served all counsel of record on July 6, 2023.

/s/ Richard S. Stern

_____

RICHARD S. STERN